*E-Filed 03/08/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KABUSHIKI KAISHA STONE CORPORATION,

    Plaintiff,

v.

AFFLICTION, INC. et al,

    Defendants.
_____/

No. C 09-2742 RS

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS**

## I. INTRODUCTION

This action arises from the parties' competing claims that they each have rights to commercialize the artwork of Japanese artist Yoshihito Nakano, who apparently is world-renowned among tattoo aficionados. Plaintiff Kabushiki Kaisha Stone Corporation ("Stone") contends it is the exclusive licensee of Nakano, and it brought this action to stop defendants Affliction, Inc. and Affliction Retail, Inc. (collectively "Affliction"), from making and selling a line of clothing and sandals that purportedly includes Nakano's artwork and stylized signature. Affliction, in turn, contends it previously entered into written agreements with Nakano directly, and that its use of his artwork and signature is permissible under those agreements.

Affliction has brought a counterclaim attempting to hold Stone liable for disrupting the arrangements it believes it had with Nakano. All but one of the counts in the counterclaim, however, seek to impose *contractual* liability against Stone under purported contracts to which Stone was not a party. The one count that seeks to hold Stone liable for *interfering* with Affliction's alleged contracts and prospective economic advantage is inadequately pleaded in several respects. Accordingly, the motion to dismiss will be granted, with leave to amend in part.[1]

## II. BACKGROUND

Affliction alleges that in September of 2007 it entered into a written "Celebrity Endorsement Agreement" with Nakano whereby it obtained the right to use Nakano's "name, likeness, and/or pictures" on its products and in any associated promotional material. Affliction further avers that in December of 2007, it and Nakano executed a "licensing agreement" giving Affliction an exclusive right to use Nakano's artwork on its clothing products. Affliction has attached copies of both agreements to its counterclaims. The licensing agreement specifically states that Nakano will provide "20 total pieces of artwork" for Affliction's approval and use, but does not identify any specific works. Additionally, although Affliction appears to be asserting elsewhere in its counterclaim that it has the exclusive rights to *any* of Nakano's artwork, the licensing agreement does not purport to cover anything other than the "20 total pieces of artwork." The Celebrity Endorsement agreement does not appear to contain any provisions relating to exclusivity. Affliction asserts it has paid Nakano $45,000 under the two agreements.

Stone was apparently formed and incorporated sometime after the agreements between Affliction and Nakano were made. Stone's complaint asserts that it is "owned in part by Mr. Nakano" and that it is the "worldwide exclusive licensee" of his artwork.

---

[1] Pursuant to Civil Local Rule 7-1(b), the Court has found this matter suitable for disposition without oral argument.

## III. DISCUSSION

A.  Contract claims

The first two counts of Affliction's counterclaims assert anticipatory breach of contract and breach of contract, respectively, against *Stone*.  The third and fourth counts seek declaratory and injunctive relief in connection with those purported breaches.  All four counts fail because Stone is not a party to the contracts—the "Celebrity Endorsement Agreement" and the "licensing agreement"—allegedly breached or about to be breached.  *See Gold v. Gibbons*, 178 Cal.App.2d 517, 519 (1960) ("Breach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations.").  Affliction suggests that Stone can be held liable under these counts because it is acting as Nakano's agent.  To be sure, it would theoretically be possible for *Nakano* to breach any valid contract to which he may be a party through the actions of his agent.  That would not, however, render the *agent* liable on the contract.[2]

Finally, Affliction suggests that it should be permitted to take discovery for purposes of determining whether it can allege an alter ego relationship between Stone and Nakano.  Alter ego doctrine permits, in appropriate circumstances, a court to "pierce the corporate veil" and impose individual liability on shareholders for the acts or obligations of a corporation.  *See Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal.App.4th 1510, 1518 (2008).  That principle has no applicability here, where Affliction is instead attempting to hold a corporation liable in contract with respect to agreements executed by one of the corporation's shareholders before the corporation was even in existence.[3]

---

[2]  Stone argues the contractual counts are inadequately pleaded in other respects, and that on their face, the documents are insufficient to create the rights Affliction is claiming to hold.  It is not necessary to reach such other issues at this juncture.

[3]  As discussed in *Kaswa*, some courts have permitted "reverse piercing" to allow a judgment creditor of a shareholder to reach general corporate assets, but that has not been accepted by California courts and would not appear warranted under any set of facts likely to exist here. *See* 162 Cal.App.4th at 1518.

Accordingly, the first four counts of Affliction's counterclaim are dismissed without leave to amend as to Stone. Affliction requests leave to add Nakano as a party defendant. Stone argues that would be futile, as there is no basis for personal jurisdiction over him. Deciding the jurisdictional question would be premature on this record. Leave to add Nakano as a defendant to contract-based claims is granted, but Affliction should do so only if it can in good faith allege a basis for personal jurisdiction.

B. Interference claims

The final count of Affliction's counterclaim is labeled "Interference with Prospective Business Advantage." In contrast to the preceding counts, this legal theory can be advanced against a person not a party to the contracts at issue. The present pleading is insufficient, however, in several respects. First, it appears from language in the claim and from Affliction's briefing that it is intending to assert Stone interfered both with existing contracts (i.e. the "Celebrity Endorsement Agreement" and the "licensing agreement" between Affliction and Nakano) and with prospective economic advantage (i.e., sales Affliction might make to its customers).

The elements of a claim for interference with an existing contract are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of that contractual relationship, (4) a breach or disruption of the contractual relationship, and (5) resulting damage. *Pacific Gas and Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990). Perhaps in part owing to its effort to allege that Stone itself breached the contract, Affliction has not alleged facts showing how Stone acted to induce Nakano to breach the contracts, or how Nakano in fact breached the contracts. Additionally, Affliction seems to be arguing that it would contravene its rights for Nakano to permit Stone to sell *any* of his artwork, but the agreements on which Affliction relies do not even purport to create exclusive rights in anything but 20 specific (and unidentified) works.

The elements of a claim for interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future

4

economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1153 (2003). The third element requires a plaintiff to prove "that the defendant engaged in an act that is wrongful apart from the interference itself." *Id.* at 1154. Here, Affliction has failed to allege how Stone has interfered with any of its customer relationships, or that actual disruption of those relationships has occurred. Again, the fact that nothing in the agreements purports to give Affliction exclusive rights to anything other than 20 specific works undermines any argument that it would be wrongful for Stone to market any of Nakano's work.

Moreover, even assuming Affliction's conclusory allegation of actual interference were sufficient, it has not alleged anything to satisfy the requirement of an act that is "wrongful apart from the interference itself." Accordingly, the final count of Affliction's counterclaim will be dismissed, with leave to amend.

C. <u>Motion to strike</u>

Stone also moves to strike Affliction's tenth "affirmative defense," which merely purports to reserve Affliction's right to assert any additional affirmative defenses that "become available or apparent" as this action goes forward. Affliction's rights with respect to potential amendments of its answer are governed by Rule 15 of the Federal Rules of Civil Procedure and precedents applying that rule. The tenth "affirmative defense" does not give Affliction any additional rights nor relieve it from complying with Rule 15 should it seek to add affirmative defenses, but neither does presence of that language in the answer in any way prejudice or burden Stone.

Stone also moves to strike the allegations of the counterclaim regarding the statutory basis of jurisdiction. Stone again does not identify any prejudice or burden arising from the presence of these legal conclusions, even if they are technically incorrect. Given the absence of any practical effect of striking the challenged allegations, the motion to strike will be denied.

5

## IV. CONCLUSION

The first through fourth claims for relief of Affliction's counterclaims are dismissed, without leave to amend as to Stone. If Affliction has a good faith basis to assert that Nakano is subject to jurisdiction in this action, it may amend and reallege contractual claims against him. The fifth claim for relief is dismissed, with leave to amend. The motion to strike is denied. Any amended counterclaim shall be filed within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 03/08/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE